JASON D. RUSSELL (SBN 169219)
Jason.Russell@skadden.com
WINSTON P. HSIAO
Winston.Hsiao@skadden.com (SBN 273638)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

OF COUNSEL:
ANTHONY J. DREYER *(Admitted Pro Hac Vice)*
Anthony.Dreyer@skadden.com
JAMIE STOCKTON (*Admitted Pro Hac Vice*)
Jamie.Stockton@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3097
Facsimile: (917) 777-3097

Attorneys for Plaintiff
DEL MONTE INTERNATIONAL GMBH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| DEL MONTE INTERNATIONAL GMBH, <br><br> Plaintiff, <br><br> v. <br><br> DEL MONTE CORPORATION, <br><br> Defendant. | Case No. 2:13-cv-5912-RSWL-MAN <br><br> **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> Date:      December 4, 2013 <br> Time:     10:00 a.m. <br> Courtroom:  21 <br> Judge:    Hon. Ronald S.W. Lew |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

I.      PRELIMINARY STATEMENT .................................................................. 1

II.     FACTUAL BACKGROUND ....................................................................... 3

        A.      The Parties ................................................................................... 3

        B.      Relevant History of the Parties................................................... 4

        C.      Plaintiff's *Bona Fide* Rights in the DEL MONTE Mark .................... 5

        D.      The New gTLD Program .............................................................. 6

        E.      Plaintiff's gTLD Application ........................................................ 7

        F.      The WIPO Proceeding.................................................................. 8

        G.      This Lawsuit ................................................................................ 9

III.    ARGUMENT ............................................................................................. 10

        A.      A Case or Controversy Exists Over Whether the Lanham Act  or the Parties' License Agreements Preclude Plaintiff's Registration ... 10

        B.      Plaintiff Has Stated a Claim For Which Relief Can Be Granted ....... 13

                1.      Plaintiff's *Bona Fide* Rights in the DEL MONTE Mark......... 14

                2.      ACPA Creates a Claim Under Which Relief Can Be Granted .................................................................................. 15

        C.      This Court Should Not Decline to Exercise Jurisdiction ................... 19

IV.     CONCLUSION ........................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona,
    330 F.3d 617 (4th Cir. 2003) ................................................................ 11, 17, 19

Chesebrough-Pond's, Inc. v. Faberge, Inc.,
    666 F.2d 393 (9th Cir. 1982) ..................................................................... 10, 17

Coto Settlement v. Eisenberg,
    593 F.3d 1031 (9th Cir. 2010) ............................................................................ 5

Hawes v. Network Solutions, Inc.,
    337 F.3d 377 (4th Cir. 2003) ............................................................................ 20

Interactive Network, Inc. v. NTN Communications, Inc.,
    875 F. Supp. 1398 (N.D. Cal. 1995) ................................................................ 10

Mack v. South Bay Beer Distributors, Inc.,
    798 F.2d 1279 (9th Cir. 1986), abrogated on other grounds by
    Astoria Federal Savings & Loan Ass'n v. Solimino,
    501 U.S. 104, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991) ................................... 5

Mann v. AFN Investments, Ltd.,
    No. 07cv0083-BEN (CAB),
    2007 WL 2177030 (S.D. Cal. July 27, 2007) ...................................... 11, 13, 17

MGIC Indemnity Corp. v. Weisman,
    803 F.2d 500 (9th Cir.1986) ............................................................................... 5

Mir v. Little Co. of Mary Hospital,
    844 F.2d 646 (9th Cir. 1988) .............................................................................. 5

Olenicoff v. UBS AG,
    No. SACV 08-1029 AG (RNBx),
    2012 WL 1192911 (C.D. Cal. Apr. 10, 2012) ................................................. 14

Rhoades v. Avon Products, Inc.,
    504 F.3d 1151 (9th Cir. 2007) ......................................................................... 10

Robert Trent Jones II, Inc. v. GFSI, Inc.,
    537 F. Supp. 2d 1061 (N.D. Cal. 2008) .......................................................... 15

Rosati's Franchise Systems, Inc. v. Rosati,
    No. 05 C 3146, 2006 WL 163145 (N.D. Ill. Jan. 17, 2006) ................ 10, 14, 15

Sallen v. Corinthians Licenciamentos LTDA,
    273 F.3d 14, 26 (1st Cir. 2001) ........................................................... 11, 12, 17

SEC v. Life Wealth Management, Inc.,
    No. CV 10-4769 RSWL (MANx),
    2010 WL 4916609 (C.D. Cal. Nov. 24, 2010) .................................................. 3

ii

Storey v. Cello Holdings, L.L.C.,
       347 F.3d 370 (2d Cir. 2003)................................................................13, 16, 17

Tradebay, LLC v. eBay, Inc., 278 F.R.D. 597 (D. Nev. 2011)..................................17

**Statutes**

15 U.S.C. § 1114(2)(D)(v) .........................................................................11, 16

S. Rep. No. 106-140 (1999) ...................................................................20

**Other Authorities**

GoDaddy.com, http://www.godaddy.com/tlds/com.aspx?ci=83241
       (last visited Nov. 5, 2013)........................................................................17

ICANN, Frequently Asked Questions, available at
       http://newgtlds.icann.org/en/applicants/customer-
       service/faqs/faqs-en (last visited Nov. 5, 2013).......................................17

ICANN, Recommendation of the Board Governance Committee,
       Reconsideration Request 13-2, May 1, 2013, available at
       http://www.icann.org/en/groups/board/governance/reconsiderati
       on/recommendation-nameshop-01may13-en.pdf ............................................12

ICANN, Recommendation of the Board Governance Committee,
       Reconsideration Request 13-5 (Aug. 1, 2013), available at
       http://www.icann.org/en/groups/board/governance/reconsiderati
       on/recommendation-booking-01aug13-en.pdf (last visited Nov.
       5, 2013) ...................................................................................7, 12

ICANN, Recommendation of the Board Governance Committee,
       Reconsideration Request 13-9, October 10, 2013, available at
       http://www.icann.org/en/groups/board/governance/reconsiderati
       on/recommendation-amazon-10oct13-en.pdf ...............................................12

Merck KGaA v. Merck Registry Holdings, Inc., Case No. LRO2013-
       0010 (Sept. 6, 2013), available at
       http://www.wipo.int/export/sites/www/amc/en/domains/lro/doc
       s/lro2013-0010.pdf...............................................................................18

WIPO, "Legal Rights Objections under ICANN's New gTLD
       Program," available at
       http://www.wipo.int/amc/en/domains/lro/#19a (last visited Nov.
       5, 2013) ...................................................................................7, 16

1    Plaintiff Del Monte International GmbH ("Plaintiff") hereby files this
2 memorandum of law in opposition to Defendant Del Monte Corporation's
3 ("Defendant") motion to dismiss.

4 **I.     PRELIMINARY STATEMENT**

5    This motion to dismiss reflects nothing more than Defendant's continued
6 efforts to deprive Plaintiff of the registration for the <.delmonte> Top Level Domain
7 ("TLD"), which Plaintiff has applied for in good faith, based upon its indisputable,
8 *bona fide* rights in the DEL MONTE trademark.  Defendant attempts to deprive
9 Plaintiff of the TLD, which it has not even sought to register, or to have transferred
10 to Defendant.  Defendant's sole purpose is to stop Plaintiff from registering the TLD,
11 which constitutes a classic case of reverse domain name hijacking that courts in this
12 circuit and elsewhere have rejected.

13    Plaintiff is indisputably the owner of the DEL MONTE trademark—including
14 the words "DEL MONTE," the DEL MONTE "device" (logo), and a combination of
15 the words DEL MONTE and the DEL MONTE device (collectively, the "DEL
16 MONTE Mark")—in South Africa, which Defendant admits in its publicly available
17 2012 and 2013 Form 10Ks.  Plaintiff has owned the Mark in South Africa (directly
18 or through its affiliates and predecessors in interest) since 1990.  This fact alone
19 provides Plaintiff with *bona fide* rights in the DEL MONTE Mark sufficient to
20 permit it to register the <.delmonte> TLD.

21    Moreover, Plaintiff, either directly or through its affiliates and predecessors in
22 interest, is party to a series of license agreements entered into in 1989 and 1990 with
23 Defendant, pursuant to which Plaintiff holds the following additional *bona fide* rights
24 in the DEL MONTE Mark:  (i) an exclusive, perpetual, royalty-free *worldwide*
25 license to use the DEL MONTE Mark on or in connection with the production,
26 manufacture, sale, and distribution of fresh fruit, fresh vegetables and fresh produce,
27 as well as certain preserved fruit products, among others; and (ii) an exclusive,
28 royalty-free license to use the DEL MONTE Mark on or in connection with the

1  production, manufacture, sale, and distribution of all food products (including
2  beverages), whether fresh or preserved, in Europe, the Middle East, Africa and the
3  former Soviet Union countries.

4      Although Defendant retained ownership of the DEL MONTE trademark in
5  many jurisdictions throughout the world, it has only retained for itself limited rights
6  to use the DEL MONTE trademark in the United States and South America, and to
7  do so on only a narrow category of products.  Moreover, on or about October 10,
8  2013, Defendant entered into a contract to sell its remaining ownership interests and
9  rights, which sale is intended to close in the first half of 2014 and will leave
10  Defendant without any ownership interests or any rights whatsoever in the DEL
11  MONTE trademark.

12      As it did in the underlying WIPO proceeding that led to this lawsuit,
13  Defendant relies upon disingenuous arguments, this time to support the instant
14  motion to dismiss.  For example, in the WIPO proceeding, Defendant argued that
15  Plaintiff was a mere licensee who lacked ownership rights in the DEL MONTE
16  Mark—a statement it knew to be false, because Defendant was well aware of
17  Plaintiff's ownership rights in the DEL MONTE Mark.  This, however, was enough
18  to mislead a majority of the WIPO Panel to wrongly speculate that there was a cloud
19  over Plaintiff's ownership rights in the DEL MONTE Mark.

20      Moreover, regardless of the issue of ownership, Defendant has never disputed
21  that Plaintiff is also the worldwide, exclusive licensee of the DEL MONTE Mark for
22  fresh fruit, fresh vegetables, and fresh produce, as well as the exclusive licensee for
23  all food products in Europe, the Middle East, Africa, and the former Soviet Union
24  countries.

25      What Defendant does dispute, however, is whether these trademark rights give
26  Plaintiff the *bona fide* right to register the <.delmonte> TLD, which consists of the
27  DEL MONTE Mark—a dispute that clearly presents a case or controversy under the
28  Lanham Act, over which this Court plainly has jurisdiction.  It is beyond cavil that

2

1  federal courts have the power to adjudicate the respective rights of licensors and
2  licensees under the Lanham Act, and courts have in fact done so in the context of
3  disputes over domain names that incorporate a trademark.  This alone is sufficient to
4  satisfy the case or controversy requirement.  In addition, the ACPA portion of the
5  Lanham Act specifically provides for jurisdiction in federal court over disputes
6  arising out of decisions of WIPO Panels, which is precisely what is at issue in this
7  lawsuit.

8       Finally, the specious ruling that Defendant seeks from this Court – that
9  second-level domain name disputes may be litigated in federal court, but top-level
10  domain name disputes may not, violates all notions of due process.  In ACPA,
11  Congress created a right to seek review of adverse decisions of WIPO Panels in
12  federal court.  The Lanham Act and ACPA speak only of domain names, without in
13  any way drawing the distinctions Defendant urges between top, second, or even third
14  level domain names.  It is illogical, to say the least, that this Court may hear a
15  challenge to a manifestly erroneous WIPO decision concerning a second-level
16  domain (which typically cost less than twenty dollars to register), but not a challenge
17  to an WIPO decision concerning a TLD, which costs hundreds of thousands of
18  dollars.

19       Therefore, despite Defendant's best efforts at misdirection, there is very
20  clearly a justiciable case or controversy here, and a claim for declaratory relief under
21  the Lanham Act has been stated upon which relief can be granted.

22  **II.   FACTUAL BACKGROUND**[1]

23  **A.   The Parties**

24       Del Monte International GmbH is a limited liability company organized under
25  the laws of Switzerland, with its principal place of business in Monaco.  (Compl. ¶ 2.)

26  ---
[1]      Unless otherwise noted, the facts are derived from the Complaint, which must
27  be presumed to be true for purposes of this motion.  See SEC v. Life Wealth Mgmt.,
Inc., No. CV 10-4769 RSWL (MANx), 2010 WL 4916609, at *1 (C.D. Cal. Nov. 24,
28  2010).

1 Del Monte International GmbH is a wholly owned subsidiary of Fresh Del Monte

2 Produce Inc. ("Fresh Del Monte"), the holding company for the Del Monte Fresh

3 Produce group of companies, which has its principal U.S. offices in Coral Gables,

4 Florida.  (Id. ¶ 3.)

5       Del Monte Corporation is a corporation organized under the laws of Delaware,

6 and has principal executive offices in San Francisco, California.  (Id. ¶ 4.)

7 **B.**     **Relevant History of the Parties**

8       Before August 1989, Del Monte Corporation was a wholly-owned subsidiary

9 of RJR Nabisco, Inc., and was divided into two major operations:  one was

10 responsible for canned fruits and vegetables, and dried fruits; the other principally

11 sold fresh fruits, fresh vegetables, and fresh produce, and certain preserved products.

12 In late 1989, the latter operation was sold to Polly Peck International, and ultimately

13 became part of Fresh Del Monte.  (Id. ¶ 12.)

14       Today, Fresh Del Monte is one of the world's leading producers and sellers of

15 high-quality fresh fruit and vegetables, as well as a leading producer and distributor

16 of prepared fruit and vegetables, juices, beverages, snacks, and desserts in Europe,

17 the Middle East, Africa, and the former Soviet Union countries.  Fresh Del Monte's

18 global sourcing and network allows it to provide consistently high-quality fresh

19 produce, juices, beverages, preserved fruit and vegetables, and value added services

20 to its customers, including retail stores, food clubs, wholesalers, distributors, and

21 food service operators in more than 80 countries worldwide.  (Id. ¶ 13.)

22       Fresh Del Monte has leading market positions in several product categories,

23 including the following, all of which are sold under the DEL MONTE trademark:

24 the number one marketer of fresh pineapples worldwide; the third-largest marketer of

25 bananas worldwide; and a leading marketer of branded fresh-cut fruit in the US, UK,

26 UAE, and Saudi Arabia.  In fiscal year 2012, Fresh Del Monte generated

27 approximately $2,664,166,000 in net sales from its DEL MONTE branded products.

28 (Id. ¶ 14.)

OPPOSITION TO MOTION TO DISMISS

1    Although Defendant retained ownership of the DEL MONTE trademark in
2  many jurisdictions throughout the world, it has only retained for itself limited rights
3  to use the DEL MONTE trademark in the United States and South America, and to
4  do so on only a narrow category of products – specifically, fruit and vegetable
5  products that have been heat treated or sterilized for the purpose of rendering them
6  shelf-stable.  (Id. ¶ 15.)  Defendant has licensed out the right to the DEL MONTE
7  trademark in all other jurisdictions throughout the world on exclusive, perpetual
8  royalty-free bases and no longer has any rights to use the DEL MONTE trademark in
9  these other jurisdictions.  (See Stockton Decl. Ex. A at 8-9; Ex. B at 9.)[2]  Moreover,
10 on or about October 10, 2013, Defendant entered into a contract to sell its remaining
11 ownership interests and rights, which sale is intended to close in the first half of 2014
12 and will leave Defendant without any ownership interests or any rights whatsoever in
13 the DEL MONTE trademark.  (See Stockton Decl. Ex. C.)

14 **C.    Plaintiff's *Bona Fide* Rights in the DEL MONTE Mark**

15    Plaintiff is indisputably the owner of the DEL MONTE Mark in South Africa
16 (see Compl. ¶ 16; Stockton Decl. Ex. A at 9; Ex. B at 8-9), and has owned the Mark
17 there (directly or through its affiliates and predecessors in interest) since 1990.
18 (Compl. ¶ 16.)  This fact alone provides Plaintiff with bona fide rights in the DEL
19 MONTE Mark.  (Id. ¶ 16.)

20

21 [2]    On a motion to dismiss, a court may consider materials relied upon in the
complaint.  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).
22 In addition, "it is proper for the district court to 'take judicial notice of matters of
public record outside the pleadings' and consider them for purposes of the motion to
23 dismiss."  Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988)
(citation omitted); see also MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th
24 Cir. 1986) (court took judicial notice of motion to dismiss filed in a separate suit and
considered it in the motion to dismiss before them); Mack v. S. Bay Beer Distribs.,
25 Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (court took judicial notice of records in a
state administrative proceeding and considered them in the motion to dismiss),
26 abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501
U.S. 104, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991).  For the convenience of the
27 Court, copies of such publicly available documents cited herein are provided as
exhibits to the Transmittal Declaration of Jamie Stockton ("Stockton Decl.") dated
28 November 6, 2013.

5

1  Moreover, Plaintiff, either directly or through its affiliates and predecessors in
2  interest, is party to a series of license agreements entered into in 1989 and 1990 with
3  Defendant, pursuant to which Plaintiff holds the following additional *bona fide* rights
4  in the DEL MONTE Mark:  (i) an exclusive, perpetual, royalty-free worldwide
5  license to use the DEL MONTE Mark on or in connection with the production,
6  manufacture, sale, and distribution of fresh fruit, fresh vegetables and fresh produce,
7  as well as certain preserved fruit products, among others; and (ii) an exclusive,
8  royalty-free license to use the DEL MONTE Mark on or in connection with the
9  production, manufacture, sale, and distribution of all food products (including
10  beverages), whether fresh or preserved, in Europe, the Middle East, Africa and the
11  former Soviet Union countries.  (Id. ¶ 17.)

12  Since Plaintiff's acquisition of these rights, the parties have engaged in
13  simultaneous use of the DEL MONTE Mark for 24 years, without any known
14  instance of consumer confusion.  (Id. ¶ 18.)

15  Furthermore, Plaintiff and its affiliates have owned and operated over a dozen
16  "delmonte" domain names for over a decade without seeking or obtaining
17  authorization from Defendant (e.g., <delmonteonline.com> (registered April 25,
18  2000) and <delmontenet.com> (registered April 25, 2000)).  Defendant has objected
19  to none of these domain names, and Plaintiff is not aware of any examples of
20  consumer confusion resulting from its registration and use of these domain names.
21  (Id. ¶ 19.)

22  **D.    The New gTLD Program**

23  In June 2011, ICANN introduced its New gTLD Program, which allows
24  parties to apply for a unique top level domain, to be used in lieu of traditional top
25  level domains, such as <.com> or <.net>.  (Id. ¶ 20.)  The application window
26  opened on January 12, 2012, and closed on May 30, 2012.  (Id. ¶ 21.)

27  ICANN also provided for a New gTLD Dispute Resolution Procedure
28  ("Procedure"), and delegated authority for administering this Procedure to its vendor

1 WIPO, which in turn adopted the WIPO Rules for New gTLD Dispute Resolution
2 for Existing Legal Rights Objections ("WIPO gTLD Rules").  (Id. ¶ 22.)

3      Pursuant to the Procedure and the WIPO gTLD Rules, third parties were
4 permitted to challenge a gTLD application by filing an LRO during a specified
5 period, which ran from June 13, 2012 through March 13, 2013.  (Id. ¶ 23.)

6      With respect to LROs pertaining to applications for gTLDs that are also
7 trademarks, the principal inquiries under the Procedure and the WIPO gTLD Rules
8 are whether the applicant has *bona fide* rights in the trademark that corresponds to
9 the applied-for gTLD and whether registration of the gTLD by the applicant would
10 create an impermissible likelihood of consumer confusion.  (Id. ¶ 24.)

11      WIPO has publicly stated that its LRO procedure does not foreclose any court
12 remedies the parties may have (see WIPO, "Legal Rights Objections under ICANN's
13 New gTLD Program," available at http://www.wipo.int/amc/en/domains/lro/#19a
14 (last visited Nov. 5, 2013)) (Stockton Decl. Ex. D), and ICANN has publicly stated
15 that there is no mechanism for reconsideration of vendor panel decisions within the
16 New gTLD application process.[3]

17 **E.**   **Plaintiff's gTLD Application**

18      Plaintiff submitted its Application for the gTLD <.delmonte> during the
19 specified period, and seeks to register <.delmonte> in order to establish and expand
20 its global presence on the Internet for the products it lawfully sells under the DEL
21 MONTE Mark.  (Compl. ¶ 25.)  Plaintiff is not a cybersquatter and has not engaged
22 in a pattern of cybersquatting conduct.  (Id. ¶ 26.)

23      Although Plaintiff knew of Defendant's existence when it applied for the
24 gTLD, Plaintiff has its own *bona fide* rights as an owner and exclusive licensee of
25

26 [3]   See ICANN, Recommendation of the Board Governance Committee,
27 Reconsideration Request 13-5, at 9 (Aug. 1, 2013), available at http://www.
28 icann.org/en/groups/board/governance/reconsideration/recommendation-booking-
01aug13-en.pdf (last visited Nov. 5, 2013).

1  the DEL MONTE Mark (as detailed above), and had no obligation to seek or obtain

2  authorization from Defendant before applying for the gTLD.  (Id. ¶ 27.)

3       Plaintiff was the first – and only – entity with *bona fide* rights in the DEL

4  MONTE Mark to apply for <.delmonte>, and therefore Plaintiff has priority with

5  respect to the gTLD.  The new gTLD application period has closed, and Defendant

6  has not applied for the <.delmonte> TLD.  Nor did Defendant seek a transfer of the

7  <.delmonte> TLD to itself; rather, it is merely attempting to play spoiler and block

8  Plaintiff's application.  (Id. ¶ 28.)

9       Moreover, as noted above, Plaintiff and its affiliates have owned and operated

10 over a dozen "delmonte" domain names for over a decade without seeking or

11 obtaining authorization from Defendant (e.g., <delmonteonline.com> (registered

12 April 25, 2000) and <delmontenet.com> (registered April 25, 2000)).  Defendant has

13 objected to none of these domain names.  (Id. ¶ 29.)

14      Similarly, third-party licensees with far more limited rights to use the DEL

15 MONTE Mark have registered "delmonte" domain names.  For example, Del Monte

16 Philippines Inc. owns <delmonte.ph>, and Nippon Del Monte Corporation (aka

17 Kikkoman) owns <delmonte.co.jp>.  (Id. ¶ 30.)

18 **F.    The WIPO Proceeding**

19      On March 1, 2013, Defendant filed an LRO objecting to the Application,

20 asserting, *inter alia*, that Plaintiff has no ownership rights in the DEL MONTE Mark,

21 and that ownership and use of the <.delmonte> TLD will mislead the general public

22 into thinking that Plaintiff holds a superior position with respect to the DEL MONTE

23 brand.  (Id. ¶ 31; Stockton Decl. Ex. E.)

24      On May 15, 2013, Plaintiff filed a timely Response to Defendant's LRO,

25 providing indisputable evidence of its ownership of, and *bona fide* rights in, the DEL

26 MONTE Mark, refuting all of Defendant's arguments, and establishing the validity

27 of its TLD Application.  (Compl. ¶ 32.)

28

1    Despite its erroneous assertion otherwise in its LRO, Defendant had actual
2    knowledge when it filed its LRO that Plaintiff (or its affiliate) owned the DEL
3    MONTE Mark in South Africa, as evidenced by its publicly available Form 10Ks,
4    one of which was filed the year before Defendant submitted its LRO, and one of
5    which was filed shortly after its LRO.  (See Stockton Decl. Ex. A at 9; Ex. B at 8-9)
6    Nor does Defendant contest the validity of this ownership here.  (Compl. ¶ 33.)

7    Despite bearing the burden of proof in the LRO, Defendant offered zero
8    evidence to support its claim that the TLD was likely to lead to consumer confusion.
9    Nor is such confusion plausible given the parties' long-standing, 24 year history of
10   simultaneous use of the DEL MONTE Mark and multiple domain names containing
11   the DEL MONTE Mark.  (Id. ¶ 34.)

12   On June 14, 2013, WIPO appointed a three-member panel ("Panel"), with the
13   principal purpose of deciding whether Plaintiff has *bona fide* rights in the DEL
14   MONTE Mark and whether registration of the TLD by the applicant would create an
15   impermissible likelihood of consumer confusion, and, based on these determinations,
16   whether to uphold or reject the LRO (the "WIPO Proceeding").  (Id. ¶ 35.)

17   On August 6, 2013, a 2-1 majority of the Panel rendered a decision in favor of
18   sustaining the objection to Plaintiff's Application, reasoning that registration of the
19   TLD would create an impermissible likelihood of confusion.  This determination was
20   based not on the arguments of the parties, but on the Panel's unsupported, *sua sponte*
21   assertion that:  (i) there is a cloud on Plaintiff's title as to the DEL MONTE Mark in
22   South Africa—which there indisputably is not; and (ii) Plaintiff's ownership of the
23   DEL MONTE Mark in South Africa violates the parties' license agreements—which
24   it undisputedly does not.  (Id. ¶ 36; Stockton Decl. Ex. F)

25   **G.    This Lawsuit**

26   On August 13, 2013, within seven days of receiving the adverse, erroneous
27   decision from WIPO, Plaintiff filed this lawsuit for declaratory judgment under the
28   Lanham Act.  (See Docket No. 1.)  Plaintiff sent notice of this lawsuit to ICANN

1  immediately thereafter, in order to stay the TLD application process pending

2  resolution of this lawsuit. (See Stockton Decl. at ¶ 7.)  On October 15, 2013,

3  Defendant filed this motion to dismiss Plaintiff's complaint.

4  **III.  ARGUMENT**

5  **A.    A Case or Controversy Exists Over Whether the Lanham Act
           or the Parties' License Agreements Preclude Plaintiff's Registration**
6

7        There are several, independent reasons why a case or controversy exists in this

8  lawsuit.  First, it is clear that the Lanham Act, 15 U.S.C. § 1051 *et seq.*, grants courts

9  the power to adjudicate license disputes, including license disputes in the domain

10  name context.  See, e.g., Rosati's Franchise Sys., Inc. v. Rosati, No. 05 C 3146, 2006

11  WL 163145, at *7 (N.D. Ill. Jan. 17, 2006) (holding, in a dispute between licensee

12  and licensor brought under the Lanham Act, that "the License Agreements granted

13  defendants broad rights in the . . . marks and did not prohibit defendants from using

14  the marks in domain names or from registering those domain names").

15        Furthermore, it is well-established that a party may bring a declaratory

16  judgment action under the Lanham Act establishing the nature and scope of its rights

17  in a trademark.  See, e.g., Chesebrough-Pond's, Inc. v. Faberge, Inc., 666 F.2d 393,

18  396 (9th Cir. 1982) (ruling that plaintiff could bring a declaratory judgment action

19  establishing its rights under the Lanham Act based on a letter by the trademark

20  owner declaring its intent to file opposition proceedings in the Patent and Trademark

21  Office); Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1158 (9th Cir. 2007) (holding

22  that plaintiff could bring a declaratory judgment action establishing its rights in a

23  mark based on letters from defendant threatening trademark infringement suit); cf.

24  Interactive Network, Inc. v. NTN Commc'ns, Inc., 875 F. Supp. 1398, 1401 (N.D.

25  Cal. 1995) (declaratory judgment brought by licensee against licensor, seeking

26  declaration of non-infringement).

27        Here, more than just an intent to file suit against Plaintiff has occurred—

28  Defendant has already filed an LRO with WIPO, which resulted in an adverse

1  finding for Plaintiff.  Such facts are more than sufficient to establish a case or

2  controversy.  See Sallen v. Corinthians Licenciamentos LTDA, 273 F.3d 14, 26 (1st

3  Cir. 2001) ("At the time [plaintiff] filed his complaint [in federal court], the dispute

4  had already progressed far beyond those cases in which a declaratory defendant only

5  questionably threatened suit.  [Plaintiff] had been brought before a WIPO panel [and]

6  the panel had found him in violation . . . .  As other courts have noted, a certain

7  controversy renders the 'reasonable apprehension' [of suit required to meet Article

8  III's case or controversy requirement] question irrelevant.").

9       Second, the Lanham Act (15 U.S.C. § 1114(2)(D)(v)) specifically creates

10 jurisdiction to bring an action for declaratory judgment under ACPA to overturn a

11 WIPO decision.  See Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De

12 Barcelona, 330 F.3d 617, 625 (4th Cir. 2003) (holding that ACPA § 1114(2)(D)(v)

13 provides federal courts with jurisdiction over cases in which plaintiff has lost a

14 WIPO proceeding and is now seeking a declaratory judgment); Sallen, 273 F.3d at

15 27 (finding that Congress, under ACPA, provided an affirmative cause of action to

16 override WIPO panel decisions); Mann v. AFN Invs., Ltd., No. 07cv0083-BEN

17 (CAB), 2007 WL 2177030, at *3 (S.D. Cal. July 27, 2007) (denying defendant's

18 motion to dismiss for lack of subject matter jurisdiction under ACPA).[4]  This is just

19 such a case, as there was an adverse decision against Plaintiff in the underlying

20 WIPO proceeding.

21       To overcome this Court's plain jurisdiction, Defendant makes several specious

22 arguments.  Specifically, Defendant contends that Plaintiff should have appealed the

23

24

25 _____

26 [4]  Defendant's argument regarding a lack of controversy over Plaintiff's Del
   Monte domain names other than the applied-for TLD is barely worth mention.  (See
27 Def.'s Brief at 5-6.)  Plaintiff's claim under ACPA is based upon Defendant
   challenging its right to register the TLD.  By claiming that Plaintiff has other DEL
28 MONTE domain names that are not in dispute,  Defendant is merely erecting a straw
   man argument to knock down.

11

1  WIPO[5] decision to ICANN instead of filing this lawsuit.  However, ICANN has

2  explicitly stated that there is <u>no</u> mechanism within ICANN for reconsideration of the

3  substantive determination of a vendor panel.[6]  Further, WIPO itself has explicitly

4  stated, in connection with ICANN's New gTLD program, that "[t]he availability of

5  the [LRO] as an administrative dispute resolution option does not preclude court

6  options which either party may have to submit the dispute to court."  WIPO, "Legal

7  Rights Objections under ICANN's New gTLD Program",

8  http://www.wipo.int/amc/en/domains/lro/#19a (Stockton Decl. Ex. C).

9      In addition, Defendant asserts yet another straw-man argument that there is no

10  case or controversy under ACPA because "Del Monte has never threatened or even

11  suggested that Plaintiff has violated the ACPA."  (Def.'s Brief at 7.)  But Defendant

12  need not assert an ACPA violation for jurisdiction to exist.  Indeed, federal courts

13  considering declaratory judgment actions under ACPA have explicitly rejected the

14  very argument Defendant makes here.  For example, in <u>Sallen v. Corinthians</u>

15

16  [5]     WIPO is the designated ICANN vendor for New gTLD disputes.  (<u>See</u> Compl.

17  ¶ 22.)

18  [6]     <u>See</u> ICANN, Recommendation of the Board Governance Committee,
    Reconsideration Request 13-5, August 1, 2013 <u>available at</u> http://www.icann.
19  org/en/groups/board/governance /reconsideration/recommendation-booking-
    01aug13-en.pdf, at 9 ("This Request challenges a substantive decision taken by a
20  panel in the New gTLD Program and not the process by which that decision was
    taken. As stated in our Recommendation on Request 13-2, Reconsideration is <u>not</u> a
21  mechanism for direct, de novo appeal of staff or panel decisions with which the
    requester disagrees, <u>and seeking such relief is, in fact, in contravention of the</u>
22  <u>established processes within ICANN</u>") (emphasis added) (Stockton Decl. Ex.  G at
    9); <u>accord</u> ICANN, Recommendation of the Board Governance Committee,
23  Reconsideration Request 13-9, October 10, 2013, <u>available at</u> http://www.icann.org/
    en/groups/board/governance/reconsideration /recommendation-amazon-10oct13-
24  en.pdf, at 8 ("The Reconsideration process will not be used . . . to evaluate the
    Panel's substantive conclusion . . . Rather, any review will be limited to whether the
25  Panel violated any established policy or process.") (Stockton Decl. Ex. H at 8);
    ICANN, Recommendation of the Board Governance Committee, Reconsideration
26  Request 13-2, May 1, 2013, <u>available at</u> http://www.icann.org/en/groups/board
    /governance/reconsideration/recommendation-nameshop-01may13-en.pdf (stating
27  that the intra-ICANN reconsideration process does not allow for a full-scale review
    of a New gTLD application, but rather that it only allows for reviews of any
28  procedural errors followed in reaching decisions on New gTLD applications)
    (Stockton Decl. Ex. I at 6).

                                    12

1  Licenciamentos LTDA, 273 F.3d 14 (1st Cir. 2001), the defendant, like Defendant

2  here, argued that the federal court lacked jurisdiction over plaintiff's suit under

3  ACPA because defendant had disclaimed any intent to sue plaintiff under the statute.

4  Id. at 17.  Thus, the defendants reasoned, since plaintiff could not reasonably fear a

5  lawsuit under ACPA, there was no Article III case or controversy.  Id.  The court

6  easily dispatched of the argument, ruling that "[a]lthough [defendant] has stated that

7  it has no intent to sue [plaintiff] under the ACPA for his past actions" there was

8  indeed a live case or controversy between the parties:  plaintiff asserted that he has

9  rights to the domain name, and defendant asserted "that it has mutually exclusive

10 rights to the same domain name." Id. at 25; see also Storey v. Cello Holdings,

11 L.L.C., 347 F.3d 370, 383 (2d Cir. 2003) (finding that a WIPO proceeding "triggered

12 [plaintiff's] right to sue under § 1114(2)(D)(v)"); accord Mann, 2007 WL 2177030,

13 at *2 (applying Sallen and Storey and holding that a WIPO proceeding triggers

14 plaintiff's right to sue under ACPA).

15       For the foregoing reasons, there can be no serious doubt that a live case or

16 controversy exists, over which the Court has at least two independent bases for

17 jurisdiction, the Lanham Act and ACPA.

18 **B.    Plaintiff Has Stated a Claim For Which Relief Can Be Granted**

19       There can also be no doubt that Plaintiff's Complaint states a claim under the

20 Lanham Act for which relief can be granted by this Court.[7]  In this regard, Plaintiff is

21 seeking a declaration under the Lanham Act (1) that Plaintiff has *bona fide* rights in

22 the DEL MONTE Mark, (2) that it is not in violation of ACPA, and (3) that

23 _____

24 [7]    Defendant's statement that "[Plaintiff's] single cause of action requests relief
   'pursuant to . . . 28 [sic] U.S.C. § 1125(d)'" is again misleading. (See Def.'s Brief at
25 4-5.) Defendant cites to a typographical error in paragraph 42 of the Complaint,
   while willfully ignoring paragraph 5 of the Complaint, which clearly states: "This is
26 an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 15
   U.S.C. § 1125(d). The U.S. District Courts have subject matter jurisdiction over this
27 matter pursuant to 28 U.S.C. §§ 1331, and 1338, and 15 U.S.C. § 1121, because this
   is a matter arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*" (emphasis
28 added).  The fact that Defendant even makes this petty argument shows the weakness
   of its overall motion.

13

1  registration of the gTLD <.delmonte> will not create an impermissible likelihood of

2  confusion.  Plaintiff has further requested that, upon making such a declaration, the

3  Court order Defendant to withdraw its LRO.

4          **1.**    **Plaintiff's *Bona Fide* Rights in the DEL MONTE Mark**

5        Defendant argues both (1) that there is not a dispute that Plaintiff has *bona fide*

6  rights in the DEL MONTE Mark (<u>see</u> Def.'s Brief at 10 ("[Plaintiff] has not alleged

7  any dispute as to the validity of its trademark rights, either under its license

8  agreement with [Defendant], or in South Africa . . . . There is no alleged controversy

9  with respect to [Plaintiff's] trademark licenses . . . .")), and (2) that Plaintiff's request

10  for a declaration of *bona fide* rights would somehow require the court to render an

11  improper advisory opinion.  (Def.'s Brief at 9-11.)

12        With respect to the former, Defendant plainly argued before WIPO that

13  Plaintiff did not have *bona fide* rights in the DEL MONTE Mark that were <u>sufficient</u>

14  <u>to allow it to register the TLD.</u>[8]  (<u>See</u> Stockton Decl. Ex. E at 7.)  Defendant's

15  argument here that there is no dispute that Plaintiff has some rights in the DEL

16  MONTE Mark is simply a thinly veiled attempt to create the illusion that there is

17  nothing for this Court to decide.  In truth, it is the extent of Plaintiff's rights and

18  whether they permit Defendant to register a specific DEL MONTE domain name

19  that is at issue.  This dispute undoubtedly states a claim upon which relief can be

20  granted.  <u>See, e.g.</u>, <u>Rosati's Franchise Sys.</u>, 2006 WL 163145, at *7 (holding, in a

21  dispute between licensee and licensor brought under the Lanham Act, that "the

---

22  [8]    This is just one of several examples cited herein where Defendant takes a

23  position that is inconsistent with a position it took before WIPO.  With respect to all
    such inconsistent positions, judicial estoppel should apply.  Judicial estoppel applies

24  when:  "'(1) the same party has taken two positions; (2) the positions were taken in
    judicial or quasi-judicial administrative proceedings; (3) the party was successful in

25  asserting the first position (i.e., the tribunal adopted the position or accepted it as
    true); (4) the two positions were totally inconsistent; and (5) the first position was

26  not taken as a result of ignorance, fraud, or mistake.'"  <u>Olenicoff v. UBS AG</u>, No.
    SACV 08-1029 AG (RNBx), 2012 WL 1192911, at *10 (C.D. Cal. Apr. 10, 2012)

27  (citation omitted); <u>see also id.</u> (holding that judicial estoppel "is designed to
    maintain the purity and integrity of the judicial process'") (citation omitted).  These

28  factors are all satisfied here, and judicial estoppel should apply.

14

1  License Agreements granted defendants broad rights in the . . . marks and did not
2  prohibit defendants from using the marks in domain names or from registering those
3  domain names"); cf. Robert Trent Jones II, Inc. v. GFSI, Inc., 537 F. Supp. 2d 1061,
4  1069 (N.D. Cal. 2008) (adjudicating dispute between licensor and licensee regarding
5  licensee's rights under the Lanham Act).

6       Moreover, Defendant also argued before WIPO that Plaintiff did not have any
7  ownership rights in the DEL MONTE Mark (see Stockton Decl. Ex. E at 7, 16)—an
8  argument that is indisputably false, and that Defendant has unsurprisingly not argued
9  before this Court considering its publicly available Form 10Ks confirm Plaintiff's
10 ownership. (See Stockton Decl. Ex. A at 9; Ex. B at 8-9.)  In other words, the
11 validity of Plaintiff's ownership of the DEL MONTE Mark in South Africa is
12 absolutely not in dispute.  Thus, there is no need for this court to render an advisory
13 opinion, or to rule on the validity of a foreign trademark.

14      What is in dispute in this lawsuit, as stated above, is whether Plaintiff has
15 *bona fide* rights sufficient to register the TLD—either pursuant to its license
16 agreements with Defendant, which are governed by U.S. law, or as owner of the
17 DEL MONTE Mark in South Africa.  Such a dispute is exactly the type of claim
18 contemplated by the Lanham Act.  Plaintiff is simply seeking an interpretation of its
19 rights in the DEL MONTE Mark, and whether that restricts its right to register the
20 <.delmonte> TLD.  Such an adjudication is fully permissible under the Lanham Act.
21 See, e.g., Rosati's Franchise Sys., 2006 WL 163145, at *7; cf. Robert Trent Jones II,
22 537 F. Supp. 2d at 1069.

23           **2.    ACPA Creates a Claim Under Which Relief Can Be Granted**

24      With respect to the ACPA portion of Plaintiff's claim, Defendant argues that
25 Plaintiff does not state a claim because a TLD should be given different legal
26 treatment than a second-level domain name.  However, this argument directly
27 contradicts the position Defendant took in the LRO brief it submitted to WIPO.
28 There, Defendant argued that TLDs should be treated just like other domain names.

1  (Stockton Decl. Ex. E at ¶ 37.)  Indeed, Defendants cited numerous cases

2  adjudicating second-level <u>domain name</u> disputes in its LRO as support for its

3  erroneous assertion that Plaintiff's use of the <.delmonte> <u>TLD</u> will cause consumer

4  confusion.  (<u>See, e.g.</u>, <u>id.</u> at ¶¶ 25, 36.)  Defendant's argument here is clearly

5  disingenuous and should be barred by judicial estoppel.  At all events, as discussed

6  above, ACPA specifically creates a claim with respect to overturning a WIPO Panel

7  decision, and makes no distinction between top, second, or even third-level domain

8  names.  <u>See</u> 15 U.S.C. § 1114(2)(D)(v).

9       Defendant also argues that ACPA should only apply where a domain name

10  registration has issued.  (Def.'s Brief at 12.)  However, this again is sleight of hand.

11  The trigger for a claim under ACPA is an adverse decision by a WIPO Panel.  <u>See</u>

12  <u>Storey</u>, 347 F.3d at 383.  It is of no moment that the application and registration

13  occur simultaneously for a second-level domain name, and separately for a TLD.  In

14  both cases a WIPO Panel is called upon to determine whether the registration is, or

15  was, appropriate, and in both cases a claim arises under ACPA.[9]

16       Defendant also argues, illogically, that Plaintiff is bound irrevocably by

17  WIPO's decison (<u>see</u> Def.'s Brief at 14), while ignoring WIPO's dictate that any

18  such WIPO proceeding does not deprive a party of its judicial remedies to challenge

19  the decision.  <u>See</u> WIPO, "Legal Rights Objections under ICANN's New gTLD

20  Program," <u>available at</u> http://www.wipo.int/amc/en/domains/lro/#19a ("The

21  availability of the [LRO] as an administrative dispute resolution option does not

22  preclude court options which either party may have to submit the dispute to court.").

23       Indeed, the draconian result urged by Defendant would violate all accepted

24  notions of due process.  In a holding later adopted by a California District Court, the

25  First Circuit observed that: "We would not lightly assume that Congress enacted the

26

27  _____

28  [9]  Moreover, the cases that Defendant cites for this proposition were not decided
in the context of domain name registrations, but rather in the context of disputes over
proposed trademarks that had not yet been finalized.

1 ACPA, but intended all domain name registrants to be governed by a different
2 standard, administered by international dispute resolution panels, with no eventual
3 recourse to whatever affirmative protections the U.S. law might provide." <u>Sallen</u>,
4 273 F.3d at 28; <u>see also</u> <u>Storey</u>, 347 F.3d 370 at 382 (finding that a claim brought by
5 a registrant under Section 1114(2)(D)(v) may appropriately seek a declaration of
6 nonviolation of the ACPA and that such finding would trump a WIPO panel's
7 finding of noncompliance); <u>Barcelona.com</u>, 330 F.3d at 625 (stating that a WIPO
8 panel's decision triggers the reason for bringing an action under ACPA, and that
9 "[j]urisdiction to hear trademark matters is conferred on federal courts by 28 U.S.C.
10 §§ 1331 and 1338"); <u>Mann</u>, 2007 WL 2177030, at *2 (applying <u>Sallen</u>, <u>Storey</u>, and
11 <u>Barcelona.com</u> in finding the same). Indeed, the ACPA authorizes a suit by a
12 domain name registrant to "seek a declaration that the registrant's registration and
13 use of the domain name involves no violation of the Lanham Act." <u>Barcelona.com</u>,
14 330 F.3d at 625.

15     Under Defendant's theory, however, only second-level domain name disputes
16 wrongly decided by WIPO panels would be subject to judicial review. Put
17 differently, in Defendants' world, judicial review is only available for disputes over
18 second-level domain names that cost $12.99 (<u>see, e.g.</u>, GoDaddy.com,
19 http://www.godaddy.com/tlds/com.aspx?ci=83241 (last visited Nov. 5, 2013)
20 (Stockton Decl. Ex. J)), but not for TLDs that cost $185,000.[10] <u>See</u> ICANN, "FAQ,"
21

---

22 [10]     Defendant disingenuously cites to <u>Tradebay, LLC v. eBay, Inc.</u>, 278 F.R.D.
597 (D. Nev. 2011) for the proposition that no live controversy exists, and omits a
23 Ninth Circuit case discussed therein that is directly on-point and that refutes
Defendant's argument. <u>Chesebrough-Pond's</u>, 666 F.2d at 396 (upholding suit
24 seeking a declaration that its mark did not constitute trademark infringement, <u>despite
the fact that</u> Plaintiff's mark had not yet been registered). Indeed, <u>Tradebay</u>
25 distinguishes <u>Chesebrough</u> on the grounds that in the latter, "it was undisputed that
the declaratory-judgment plaintiff was using the disputed mark in commerce and had
26 spent approximately $650,000 in its initial investment," while in <u>Tradebay</u>, Plaintiff
was "vague, conclusory and contradictory <u>about whether Plaintiff . . . has expended</u>
27 <u>significant resources to develop and use the mark</u>." 278 F.R.D. at 606-07 (emphasis
added). Similarly here, Plaintiff spent $185,000 on its TLD application, which is
28 non-refundable once a WIPO Panel decision has been rendered.

1  available at http://newgtlds.icann.org/en/applicants/customer-service/faqs/faqs-en

2  (last visited Nov. 5, 2013) (Stockton Decl. Ex. K).  This is the epitome of a violation

3  of due process.

4         Defendant's theory is particularly troubling because the underlying WIPO

5  decision was based on the erroneous speculation that Plaintiff's ownership of the

6  DEL MONTE Mark in South Africa is suspect.  Even worse, the Panel majority

7  reached this erroneous and baseless conclusion (1) *sua sponte*; (2) without any

8  evidentiary hearing or argument; and (3) over the objection of the dissenting panelist,

9  who felt that Defendant had not carried its burden and that supplemental submissions

10 on this issue should have been accepted by the Panel before reaching the conclusion

11 it did.  (See Stockton Decl. Ex. F at 12.)

12        Perhaps even more troubling is the fact that the WIPO Panel's majority

13 decision regarding the <.delmonte> TLD is in direct contradiction to the decision in

14 a separate WIPO proceeding handed down just weeks later, regarding the application

15 for a TLD involving two parties who both have rights in the MERCK trademark.

16 See Merck KGaA v. Merck Registry Holdings, Inc., No. LRO2013-0010 (Sept. 6,

17 2013), available at

18 http://www.wipo.int/export/sites/www/amc/en/domains/lro/docs/lro2013-0010.pdf

19 (Stockton Decl. Ex. L).  Merck involved a dispute that was in many ways identical to

20 this case in that it involved a TLD dispute between two co-existing entities, one with

21 trademark rights in the United States and Canada and the other with worldwide

22 trademark rights outside the United States and Canada.  The Merck WIPO Panel

23 rejected Objector's LRO and awarded the TLD to the applicant because, as is the

24 case here, applicant had the *bona fide* right to use the mark that was the subject of

25 the TLD.  (Id. at 8 (holding that applicant has used the mark for many years in

26 connection with the *bona fide* offering of goods and services, and that such *bona fide*

27 use does not interfere with the exercise by objector of its trademark rights).  Such

28 conflicting decisions illustrate precisely why WIPO rulings regarding TLD disputes

18

1 between trademark rights holders <u>must</u> be subject to subsequent judicial proceedings
2 to comport with fundamental principles of due process.  On this ground alone,
3 judicial review is appropriate.

4 **C.     <u>This Court Should Not Decline to Exercise Jurisdiction</u>**

5   Defendant's final request in its brief—that this Court should decline to
6 exercise declaratory jurisdiction in this case even if it determines that a case or
7 controversy exists, and that a claim has been stated upon which relief can be
8 granted—should also be denied.  Defendant merely rehashes the specious arguments
9 from the other sections of its brief in support of this argument (<u>see</u> Def.'s Brief at 13-
10 14), all of which have been refuted above.

11   Even if this Court were to consider this argument and apply the <u>Williams</u>
12 factors cited by Defendant (Def.'s Brief at 13), which it should not, these factors
13 weigh in favor of exercising jurisdiction over this dispute for the following reasons:
14 (1) this action will settle all aspects of the controversy by determining the validity of
15 the underlying WIPO decision; (2) this action will serve a useful purpose in
16 clarifying the legal relationship between the parties with respect to TLDs consisting
17 of the DEL MONTE Mark; (3) the declaration is not being sought to obtain a res
18 judicata advantage, but rather to rectify the erroneous WIPO decision and permit
19 Plaintiff to utilize the <.delmonte> TLD; (4) this action does not promote forum
20 shopping, as it was chosen in good faith based on the judicial district wherein
21 ICANN maintains its headquarters; and (5) this action will not result in duplicative
22 litigation, because – like countless prior disputes under APCA – it comes following
23 the rendering of a WIPO decision, not a parallel proceeding.

24   Furthermore, this Court should deny Defendant's request that it decline to
25 exercise jurisdiction because it is clear from Defendant's actions that its sole goal is
26 to engage in reverse domain name hijacking.  Reverse domain name hijacking occurs
27 when a trademark owner overreaches and attempts to block a third party with *bona*
28 *fide* rights in that same trademark from registering a domain name.  <u>See</u>

19

1 Barcelona.com, 330 F.3d at 625 ("[Section] 1114(2)(D)(v) authorizes a domain name
2 registrant to sue trademark owners for 'reverse domain name hijacking.'").

3       Defendant's untoward conduct in this regard is exacerbated by the fact that it
4 did not apply for, or seek transfer of, the TLD in the WIPO proceeding.  Instead, it is
5 merely trying to play spoiler and deprive Plaintiff of the TLD.  This is a classic case
6 of reverse domain name hijacking, over which courts routinely exercise jurisdiction.
7 See Hawes v. Network Solutions, Inc., 337 F.3d 377, 386 (4th Cir. 2003).

8       Courts have made clear that Congress intended to supply, in ACPA, "an
9 American cause of action provided to protect domain name registrants from
10 overreaching trademark owners, by supplying a cause of action for adjudication in a
11 federal court under the law of the United States."  Id.  Congress has stated that "a
12 trademark owner who knowingly and materially misrepresents to the domain name
13 registrar or registry that a domain name is infringing is liable to the domain name
14 registrant for damages."  S. Rep. No. 106-140, at 11 (1999).  Congress's statement,
15 and WIPO's express acknowledgment that a WIPO Proceeding does not preclude the
16 party's submission of the dispute to court, comports with fundamental principles of
17 due process and judicial review.

18 **IV.   CONCLUSION**

19       For the reasons stated above, this Court should deny Defendant's motion to
20 dismiss the Complaint in its entirety.

21       DATED:  November 6, 2013

22

23                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

24

25                    By: _____

26                            Anthony J. Dreyer
27                            Attorneys for Plaintiff
                              Del Monte International GmbH
28